J-S04003-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| LUIS HERNANDEZ-NUNEZ, | |
| Appellant | No. 1365 EDA 2016 |

Appeal from the PCRA Order April 8, 2016
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0001824-2011

BEFORE:  SHOGAN and OTT, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY SHOGAN, J.:                    **FILED MARCH 13, 2017**

Appellant, Luis Hernandez-Nunez, appeals, *pro se*, from the order denying his petition for collateral relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  We affirm.

The PCRA court summarized the facts of this case as follows:

> On January 5th, 2011, at approximately 1:24 a.m., Allentown Police responded to 724 Gordon Street, Allentown, Lehigh County, Pennsylvania for a report of an armed robbery in which the victims were reportedly struck with a handgun.  The victims in this matter, brothers Justo and Mario Rodriguez, were later interviewed by Detective Stephen Milkovits at police headquarters.  Justo Rodriguez related that he and two of his friends went to the B&B Piano Bar located at 248 North Ninth Street, Allentown, at approximately 8 p.m. on January 4, 2011.  He was later joined by his brother, Mario, and his nephew at approximately 10:20 p.m.  While at the Piano Bar, the men

_____

[*]  Former Justice specially assigned to the Superior Court.

consumed some beer and were approached by an unknown Hispanic female, later identified as [Appellant's] co-defendant Chrissy Martinez. The men and Ms. Martinez spoke at the bar and drank beers together. Justo Rodriguez stated he provided Ms. Martinez with his cellular telephone number and that of his nephew prior to her leaving the bar. After Ms. Martinez left the bar, Justo Rodriguez received a telephone call from Ms. Martinez, inviting him and Mario Rodriguez to 724 Gordon Street.

The victims arrived at 724 Gordon Street and Ms. Martinez met them outside and invited them inside the residence. Upon entering, the victims stated they were confronted by a group of males, later identified as Juan Ramos, Jose Diaz and Alexander Castro.[3] At least one of the males was armed with a handgun, though the victims could not identify which man had the gun. One of the co-conspirators pointed the handgun at both of the victims. Justo Rodriguez was struck in the face and Mario Rodriguez was struck in the head. During the course of the robbery, the codefendants took two cell phones and approximately $600.00 in U.S. currency from the victims. Additionally, the victims' wallets were stolen, which contained bank and identification cards.

[3] Juan Ramos and Jose Diaz were later charged as co-conspirators as well.

As a result of being struck in the head with the handgun, Mario Rodriguez sustained a laceration, requiring medical attention and several staples to his scalp to close the laceration.

Further investigation by Allentown police revealed that prior to Ms. Martinez going to the Piano Bar, and as testified to at trial by Ms. Martinez, [Appellant] had directed Ms. Martinez to lure the victims from the bar to the vacant residence located at 724 Gordon Street. Additionally, the gun that was used during the robbery was provided to the co-defendants by [Appellant]. [Appellant] waited outside of 724 Gordon Street while the robbery occurred and then drove Ms. Martinez from the scene after the robbery.

Detective Milkovits, during the course of his investigation, spoke with the owner of the property, Yolanda Mohr, who stated that the residence had been vacant for approximately two months while maintenance work was done and that no one had

her permission to be inside of the residence. Detective Milkovits observed damage to a first floor window of the residence as well as what appeared to be shoe prints on the toilet seat below the window. Ms. Mohr stated the damage was new and that she did not know the exact value of the damage at the time. Detective Milkovits did not observe any other signs of forced entry to the residence.

PCRA Court Opinion, 4/8/16, at 3-5.

The PCRA court summarized the procedural history of this case as follows:

On June 13, 2011, [Appellant] was arraigned on charges of Robbery (18 Pa.Con.Stat.Ann. §3701(a)(1)(ii and iv)), Conspiracy to Commit Robbery (18 Pa.Con.Stat.Ann. §903), Burglary (18 Pa.Con.Stat.Ann. §3502), Criminal Trespass (18 Pa.Con.Stat.Ann. §3503(a)(1)(ii)), Aggravated Assault (18 Pa.Con.Stat.Ann. §2702(a)(4)), Theft by Unlawful Taking (18 Pa.Con.Stat.Ann. §3921), Simple Assault (18 Pa.Con.Stat.Ann. §2701(a)(1)), and Criminal Mischief (18 Pa.Con.Stat.Ann. § 3304(a)(5)).

On March 13, 2012, jury selection began in this matter.[1] A jury trial was held from March 14, 2012 until the jury came to verdict on March 19, 2012. [Appellant] was found guilty of Robbery, Conspiracy to Commit Robbery, Burglary, Criminal Trespass, Aggravated Assault, Theft by Unlawful Taking, and Criminal Mischief. On the same day, the Court determined that [Appellant] was not guilty of the summary offense of Criminal Mischief.

[1] The Appellant was tried with his co-defendant Alexander Castro.

On May 8, 2012, [Appellant] was sentenced to pay the costs of prosecution and restitution and to serve an aggregate sentence of not less than 7 years nor more than 16 years in a State Correctional Institution.

On May 29, 2012, [Appellant] filed a Notice of Appeal and on June 5, 2013, the Superior Court affirmed the judgement [sic] of sentence. On November 7, 2013, [Appellant's] Petition

for Allowance of Appeal to the Supreme Court of Pennsylvania was denied.

On August 21, 2014, [Appellant] filed a *pro se* PCRA Petition. On August 26, 2014, the [c]ourt appointed Attorney Matthew Rapa, Esquire to represent [Appellant]. On January 2, 2015, Attorney Rapa filed a Motion to Withdraw as Counsel. After a hearing held on February 20, 2015, the [c]ourt permitted Attorney Rapa to withdraw from this matter.

On March 31, 2015, the [c]ourt received a *pro se* Supplementary PCRA Petition. In the Supplementary PCRA Petition, [Appellant] argued that in addition to the previous allegations of ineffective assistance of trial counsel (Robert Long, Esquire), Attorney Rapa was ineffective for failing to pursue the claims alleged in [Appellant's] *pro se* PCRA Petition filed on August 21, 2014.

On May 1, 2015, December 23, 2015, and February 5, 2016, hearings were held regarding the allegations of ineffectiveness of trial counsel. At the conclusion of the February 5, 2016 Hearing, [Appellant] submitted an Argument in Support of His PCRA Petition and the [c]ourt took the matter under advisement. On March 24, 2016, the Commonwealth submitted its Argument in Opposition of PCRA Petition.

PCRA Court Opinion, 4/8/16, at 2-3.

The PCRA court denied Appellant's petition on April 8, 2016. Appellant filed a timely notice of appeal on April 28, 2016. Both the PCRA court and Appellant complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

I. Whether PCRA counsel was ineffective for failing to raise the ineffectiveness of trial counsel, where trial counsel failed to impeach, through cross-examination, the Commonwealth's chief witness' -- Chrissy Martinez's -- testimony, with evidence that on the night of the robbery she was intoxicated with ecstasy, alcohol, and marijuana.

- 4 -

II.    Whether PCRA counsel was ineffective for failing to raise the ineffectiveness of trial counsel, where trial counsel decided to call the Appellant's codefendant – Juan "Ramos" -- as a defense witness, without considering that:  (1) Ramos had previously implicated the Appellant (who was Chrissy Martinez's boyfriend) in the crime; (2) the testimony Ramos planned to and did give completely contradicted his prior verbal and written statements to police; and (3) counsel failed to share or discuss with Appellant, Ramos' prior and written statements to the police, as well as, the testimony that Ramos planned to give at trial.

III.    Whether the PCRA court committed an error of law in denying relief where there were multiple instances of ineffective assistance of counsel, "in combination," which caused the Appellant cumulative prejudice.

Appellant's Brief at 3 (full capitalization omitted).

All of Appellant's issues raise claims of ineffective assistance of counsel.

To prevail in a claim of ineffective assistance of counsel, a petitioner must overcome the presumption that counsel is effective by establishing all of the following three elements, as set forth in *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975–76 (1987):  (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's ineffectiveness.

*Commonwealth v. Paddy*, 15 A.3d 431, 442 (Pa. 2011).  With regard to the second, reasonable basis prong, "we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis."  *Commonwealth v. Washington*, 927 A.2d 586, 594 (Pa. 2007).  We will conclude that counsel's chosen strategy lacked a reasonable basis only if Appellant proves that "an alternative not chosen offered a potential

- 5 -

for success substantially greater than the course actually pursued."
*Commonwealth v. Williams*, 899 A.2d 1060, 1064 (Pa. 2006). "In order to meet the prejudice prong of the ineffectiveness standard, a defendant must show that there is a 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Commonwealth v. Reed*, 42 A.3d 314, 319 (Pa. Super. 2012).

A claim of ineffective assistance of counsel will fail if the petitioner does not meet any of the three prongs. *Commonwealth v. Williams*, 863 A.2d 505, 513 (Pa. 2004). "The burden of proving ineffectiveness rests with Appellant." *Commonwealth v. Rega*, 933 A.2d 997, 1018 (Pa. 2007).

In Appellant's first two issues, he argues that appellate counsel was ineffective for failing to raise the ineffectiveness of trial counsel. Appellant's Brief at 3. In a layered ineffectiveness claim, appellate counsel is not ineffective for failing to raise an ineffective assistance of counsel issue where the underlying claim lacks merit. As this Court has explained:

> To prevail on a claim of appellate counsel ineffectiveness for failure to raise an allegation of trial counsel ineffectiveness, a PCRA petitioner must present a 'layered' claim, *i.e.*, he or she must present argument as to each of the three prongs of the *Pierce* test for each layer of allegedly ineffective representation. To establish the arguable merit prong of a claim of appellate counsel ineffectiveness for failure to raise a claim of trial counsel ineffectiveness, the petitioner must prove that trial counsel was ineffective under the three-prong *Pierce* standard. If the petitioner cannot prove the underlying claim of trial counsel ineffectiveness, then petitioner's derivative claim of appellate counsel ineffectiveness of necessity must fail, and it is not necessary for the court to address the other two prongs of the *Pierce* test as applied to appellate counsel.

***Paddy***, 15 A.3d at 443 (internal citations omitted).

In his first issue, Appellant maintains that trial counsel, Attorney Robert Long, was ineffective for failing to cross-examine the Commonwealth's chief witness, Chrissy Martinez ("Martinez"), regarding her level of intoxication on the night of the robbery. Appellant's Brief at 14. Appellant contends that due to her level of intoxication, Martinez's ability to correctly perceive the facts which she purported to have observed was highly questionable. ***Id.*** Appellant asserts that although Martinez admitted at trial that she had smoked marijuana prior to the robbery, trial counsel failed to present on cross-examination the fact that Martinez was also drunk and had ingested Ecstasy the night of the robbery, thereby impeding her ability to accurately perceive the facts she purported to observe. ***Id.***

In addressing this issue, the PCRA court provided the following analysis:

> Ms. Martinez's intoxication at the time of the criminal incident was brought out by the Commonwealth during her direct testimony. On cross-examination, Attorney Long focused on Ms. Martinez's failure to initially identify [Appellant] as a participant in the criminal operation and the fact that she only identified him after alleged police pressure during a *third* interview with police. Attorney Long also argued in closing arguments that Ms. Martinez was fabricating [Appellant's] involvement in order to get back at him for failing to visit her while she was incarcerated and in order to receive a more lenient sentence for her participation in the robberies. Again, we find that Attorney Long's trial strategy with regard to Ms. Martinez and her testimony was reasonable. Ms. Martinez's intoxication during the course of the evening of the robberies was brought out on direct examination by the Commonwealth. Therefore, it was

already before the jury and further cross-examination would have been cumulative. Further, Attorney Long was able to identify a motive for Ms. Martinez to lie to the police and on the witness stand. We cannot find Attorney Long ineffective in pursuing this trial strategy.

PCRA Court Opinion, 4/8/16, at 9-10 (emphasis in original).

The evidence presented at trial supports the PCRA court's conclusion. On direct examination, Martinez admitted to smoking marijuana on the night of the robberies prior to her encounter with the victims at the bar. N.T., 3/14/12, at 160. Additionally, she testified to drinking alcohol at the bar. *Id.* at 164. Thus, the jury could reasonably conclude that Martinez was under the influence on the night of the robbery. Moreover, trial counsel attempted to establish a motive for Martinez's testimony implicating Appellant. Specifically, that by testifying against Appellant, Martinez was exacting her revenge upon him for his failure to contact her when she was incarcerated. *Id.* at 200-201. This evidence of a motive was more likely to discredit Martinez's testimony than would have additional testimony regarding her intoxication. Thus, we agree with the PCRA court's conclusion that it was a reasonable strategy for trial counsel not to introduce cumulative evidence of Martinez's level of intoxication, but rather, to attempt to discredit her by establishing a motive for her incriminating testimony.

Additionally, Appellant suffered no prejudice by trial counsel's failure to further question Martinez regarding her level of intoxication on the evening

of the robbery. Even if counsel had cross-examined Martinez regarding her level of intoxication, such questioning likely would not change the outcome of the trial. The testimony from the victims corroborated the recitation of events provided by Martinez. N.T., 3/14/12, at 55-65, 90-99. Additionally, the victims' testimony established that Martinez was coherent enough to engage the two at the bar and get their phone numbers. N.T., 3/14/12, at 56-60, 80-81, 92-96, 120-121. She was able to effectively communicate with them on the telephone and provide the necessary information to get them to 724 Gordon Street. *Id.* at 60, 94-96. There was ample evidence for the jury to determine that Martinez was sufficiently coherent on the night in question and accurately perceived the facts to which she testified. Thus, we cannot conclude that had trial counsel cross-examined Martinez regarding her level of intoxication, that there was a reasonable probability that the outcome of the trial would have differed. *Reed*, 42 A.3d at 319. Accordingly, Appellant did not suffer prejudice from this alleged ineffectiveness and his claim must fail. *Paddy*, 15 A.3d at 442.

Because Appellant has failed to establish an underlying claim of trial counsel's ineffectiveness, Appellant's claim of appellate counsel ineffectiveness also lacks merit. *Paddy*, 15 A.3d at 443. Accordingly, Appellant is entitled to no relief on his first issue.

In his second issue, Appellant asserts that PCRA counsel was ineffective for failing to raise trial counsel's ineffectiveness for calling Juan

Ramos ("Ramos") as a defense witness. Appellant's Brief at 22. Appellant maintains that trial counsel could not have had a reasonable strategic basis for calling Ramos to the stand. *Id.* Appellant argues that trial counsel erred in calling Ramos as a defense witness for the following reasons:

> (1) Ramos had previously implicated the Appellant (who was Chrissy Martinez's boyfriend) in the crime; (2) the testimony Ramos planned to and did give completely contradicted his prior verbal and written statements to police; and (3) counsel failed to share or discuss with Appellant, Ramos' prior verbal and written statements to the police, as well as, the testimony that Ramos planned to give at trial.

*Id.* (full capitalization omitted).

The PCRA court provided the following analysis of Appellant's claim:

> [Appellant] first alleges that trial counsel was ineffective when he allowed Juan Ramos, a co-defendant, to testify on behalf of the defense. Attorney Long, during the PCRA Hearings, testified that during the course of trial (March 14, 2012), but prior to Mr. Ramos being called to the stand, he was made aware of a letter sent by Mr. Ramos to the Court that claimed that [Appellant] had nothing to do with the criminal incident. Attorney Long contacted Mr. Ramos' attorney and was given permission to interview Mr. Ramos at Lehigh County Jail. During an interview on March 14, 2012, Mr. Ramos told Attorney Long that [Appellant] had nothing to do with the robberies and that he was willing to testify to that. Further, Mr. Ramos reviewed a prior statement that he gave the police regarding the incident. While no mention of [Appellant] by name was made in the statement, Mr. Ramos did allude to "the boyfriend" of Ms. Martinez. When specifically asked by Attorney Long, Mr. Ramos denied that "the boyfriend" was [Appellant]. Attorney Long again met with Mr. Ramos the following day. Mr. Ramos indicated he was still willing to testify that [Appellant] was not involved in the crime. Attorney Long testified that based on his conversations with Mr. Ramos at the jail prior to him testifying, he believed that Mr. Ramos could exculpate [Appellant].

Attorney Long discussed the potential for Mr. Ramos to testify with [Appellant]. Mr. Ramos testified at trial on March 16, 2012. He told the jury that [Appellant] was not involved in the robberies and that he (Mr. Ramos) acted alone. He denied telling the police that anyone else was involved.

It is clear from the testimony taken during the PCRA Hearings that Attorney Long's decision to call Mr. Ramos as a witness was a reasonable trial strategy. Mr. Ramos, during his interviews prior to taking the stand and while testifying, was steadfast in his assertion that [Appellant] had nothing to do with the crimes alleged by the Commonwealth. In fact, Mr. Ramos took full responsibility for the robberies and assaults and further indicated that the statement he made to the police (indicating a "boyfriend" who Mr. Ramos refused to say was [Appellant]) was inaccurate. Therefore, we find this allegation of ineffectiveness without merit.

PCRA Court Opinion, 4/18/16, at 8-9.

The record supports the PCRA court's determination on this issue. At the PCRA hearing, Attorney Long testified that he was made aware of Ramos's letter wherein Ramos indicted he was willing to testify on Appellant's behalf. N.T., 12/23/15, at 8. Furthermore, Attorney Long explained that he interviewed Ramos twice regarding his proposed testimony, and Ramos maintained that he robbed the victims by himself. *Id.* at 8-9. As a result of his discussions with Ramos, Attorney Long decided to proceed with calling Ramos as a defense witness because his testimony exculpated Appellant. *Id.* at 11. Moreover, Attorney Long stated that he and Appellant had discussed production of Ramos as a witness. *Id.* at 7-8. Thus, we agree with the PCRA court's conclusion that Attorney Long had a reasonable basis for calling Ramos as a witness. As a result, Appellant's

claim of trial counsel's ineffectiveness fails. Furthermore, because there was no ineffectiveness of trial counsel, there was no viable claim for ineffective assistance of PCRA counsel. *Paddy*, 15 A.3d at 443

In his final issue, Appellant asserts that the PCRA court committed an error of law in denying relief where there were multiple instances of ineffective assistance of counsel "in combination," which caused Appellant cumulative prejudice. Appellant's Brief at 35. Appellant further explains:

> In the instant matter, there were multiple instances of deficient performance, as mentioned hereinabove: (1) counsel failed to impeach the Commonwealth's key, sole witness against the Appellant with evidence that on the night of the robbery she was heavily intoxicated with Alcohol, Ecstasy and Marijuana (pp. 14-21 herein); (2) counsel called a witness to testify at trial that had previously implicated the Appellant in the crime (pp. 26-28 herein); (3) counsel called a witness who's testimony would be false and/or in contradiction of previous statements made to police and defense counsel (pp. 28-31 herein); (4) counsel called a witness who's previous account of events corroborated the testimony of the Commonwealth's only witness against the Appellant (p. 34 herein); and counsel failed to obtain the Appellant's informed consent before calling the defense witness (pp. 23-26).

Appellant's Brief at 35-36.

We first note that Appellant fails to provide specificity with regard to the alleged errors of counsel. We observe, however, that the page references included in Appellant's argument correlate to sections of his brief relating to Martinez and Ramos, respectively. Thus, to the extent it can be inferred from Appellant's statement that he is again asserting that trial counsel was ineffective with regard to witnesses Martinez and Ramos, we

have previously concluded that Appellant failed to raise any viable ineffectiveness claims regarding these witnesses.

Moreover, our Supreme Court has held that "no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually." *Commonwealth v. Hanible*, 30 A.3d 426, 483 (Pa. 2011). Because Appellant has failed to demonstrate that any of his claims of ineffectiveness warrant relief individually, they do not do so when considered collectively. Accordingly, there can be no meritorious claim of PCRA counsel's ineffectiveness. *Paddy*, 15 A.3d at 443.

Order affirmed.

Judge Ott joins the Memorandum.

P.J.E. Stevens concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/13/2017